Land, Log & Lumber Co. and others vs. Brown and others.

LAND, LOG & LUMBER COMPANY and others, Respondents, vs. BROWN and others, Appellants.

*October 12, 1888 — January 29, 1889.*

*Constitutional law: Towns: Unincorporated villages: Taxation.*

1. Ch. 292, Laws of 1883,—providing that "all powers relating to villages and conferred upon village boards by ch. 40, R. S., and all acts amendatory thereof, excepting those the exercise of which

Land, Log & Lumber Co. and others vs. Brown and others.

would conflict with the provisions of law relative to towns and town boards, are conferred upon towns and town boards of towns containing one or more unincorporated villages of not less than 1,000 inhabitants, and are made applicable to such villages, and may be exercised therein when directed by a resolution of the electors of the town," etc.,— is not void for uncertainty.

2. Said act does not incorporate the villages as separate municipalities, and is not in violation of sec. 3, art. XI, Const. The power given to the legislature to incorporate villages does not deprive it of power to legislate for their control and government before they are incorporated.

3. The fact that the law is applicable only to towns containing villages of a certain population does not render it a violation of sec. 23, art. IV, Const., providing that the legislature shall establish but one system of town and county government.

4. Nor is the act void under any rule of public policy which forbids the taxation of property for any purpose not benefiting it. It is for the legislature, not for the courts, to fix the limits of the taxing district.

APPEAL from the Circuit Court for *Oneida* County.

The case is sufficiently stated in the opinion.

For the appellants there was a brief by *Alban & Barnes*, and oral argument by *John Barnes*.

*W. F. Bailey*, for the respondents, contended, *inter alia*, that ch. 292, Laws of 1883, is in violation of sec. 3, art. XI, Const., which provides that "it shall be the duty of the legislature, and they are empowered, to provide for the organization of cities and incorporated villages," etc. If a community is in need of corporate functions, it is the duty of the legislature to incorporate it. It cannot grant corporate powers without corporation. The act is also in violation of the constitutional principle which prohibits unequal and partial legislation upon general subjects. *Durkee v. Janesville*, 28 Wis. 465; *People v. Salem*, 20 Mich. 473. It is also in violation of sec. 23, art. IV, of the constitution, which provides that "the legislature shall establish but one system of town and county government, which shall be as nearly uniform as practicable." *State ex rel. Peck v.*

*Riordan,* 24 Wis. 488; *State ex rel. Keenan v. Milwaukee Co.* 25 id. 346; *McRae v. Hogan,* 39 id. 529; *State ex rel. Walsh v. Dousman,* 28 id. 541. It also violates the provisions of sec. 13, art. I, of the constitution, which provides that "the property of no person shall be taken for public use without just compensation therefor." *Buell v. Ball,* 20 Iowa, 288; *Deiman v. Ft. Madison,* 30 id. 542; *Brooks v. Polk Co.* 52 id. 460; *Durant v. Kauffman,* 34 id. 194; *Smith v. Sherry,* 50 Wis. 216; *Borough of Little Meadows,* 35 Pa. St. 335.

The following opinion was filed November 8, 1888:

TAYLOR, J. This action was commenced by the said *Land, Log & Lumber Company* against the appellants to restrain said appellants, the board of supervisors of the town of *Pelican,* from allowing any bills or claims, either for the construction, maintenance, or operation of water-works in the village of Rhinelander, or in said town, and from allowing or auditing any bills for the payment of salaries or wages of any firemen, fire engineers, or other persons engaged in or about the operation of water-works in said village of Rhinelander; or from paying salaries or wages of any policeman or night-watch in said village or territory immediately adjacent thereto; and restraining the treasurer of said town of *Pelican* from paying a certain town order (described in the complaint) for the sum of $3,624.94, out of any funds of said town; and also from the payment of any orders by him, as such treasurer, for the payment of salaries or wages of water-works engineer, firemen, policeman, and night-watch; also restraining said board of supervisors and their successors in office from levying or assessing any taxes upon the property of the plaintiff or other tax-payers of said town for the purpose of paying, or to be used in the payment, for any work, labor, or material used or to be used in the construction of said

water-works, or in the maintenance or operation of the same, or in the payment of wages or salaries "of engineer or firemen employed to operate the same, or for the wages or salaries of policemen or night-watch; and that the defendants *W. E. Brown, C. Faust*, and *G. H. Clark* be adjudged and decreed to pay and to deliver to the treasurer of the said town of *Pelican* the amounts of the claims and bills which they, acting as a board of supervisors of said town, have illegally or fraudulently audited, and which have been paid for the purposes hereinbefore stated, being for the construction, maintenance, and operation of water-works, to the amount of $4,431; also the amount of bills and claims which they illegally and fraudulently allowed, and which have been paid to the subscribers for fire wells as herein stated, being the amount of $296.34; also the amount of bills and claims which they have illegally audited and allowed for the payment of salaries, and salaries or wages of policemen and night-watch, being for such last-mentioned purposes, to the amount of $430; and for such other order or relief or decree in the premises as may be proper and agreeable to equity; and that in the mean time, and until this action can be heard and determined, or until the further order of the court, the said board of supervisors and their successors in office, and the said treasurer and his successor or successors in office, and the town of *Pelican*, be temporarily enjoined and restrained from doing any of the acts hereinbefore prayed to be enjoined and restrained as a relief in this action, and for such other or further temporary order or relief as may be proper in the premises; and that the plaintiff may have and recover judgment for its costs and disbursements in this action."

A preliminary injunction was granted *ex parte*, as prayed for in the complaint. The defendants, upon answer and affidavits. moved to vacate such preliminary injunction. The motion was denied by the court, and from the order denying such motion the defendants appealed to this court.

The facts stated in the complaint and answer show that in the said town of *Pelican* there is quite a large village called Rhinelander, which is neither incorporated by special act nor by general law; that said town of *Pelican* is large in extent, containing 800 square miles; that most of the inhabitants live in the village of Rhinelander; that the other parts of the town are thinly inhabited. It is further shown by the complaint and answer that at the town meeting held in said town of *Pelican*, in April, 1887, a resolution was adopted by the qualified electors of said town of *Pelican*, conferring on the town board of supervisors of said town all powers conferred on village boards by ch. 40, R. S. 1878, and the acts amendatory thereof, excepting those the exercise of which would conflict with the provisions of the law relative to towns and town boards. This resolution was passed under the authority of ch. 292, Laws of 1883. It is also alleged that at the time such resolution was adopted, the said village of Rhinelander contained more than 1,000 inhabitants. The answer then alleges that said town board, under the authority conferred on it by said resolution and said ch. 292, Laws of 1883, proceeded in a regular way to construct water-works in said village of Rhinelander; alleges that said water-works were greatly needed for the protection of the property in said village; and that in constructing, maintaining, and operating said water-works they expended a considerable sum of money, some of which has not been paid and is represented by the town order of $3,624.94, the payment of which is sought to be restrained by this action; and that it is necessary to expend other sums in order to maintain and operate said water-works, which are also sought to be restrained by the plaintiff. The answer also alleges that the maintenance of public peace and good order required the employment of police officers for said village, and that no more were employed than were necessary for the maintenance of the peace and

good order in said village. All charges of fraud and corruption on the part of the defendants are denied.

The learned counsel for the respondent in his argument in this court insists that ch. 292, Laws of 1883, under which the defendants justify their action in erecting and maintaining water-works and other fire protections, is unconstitutional and void, and that their acts in employing policemen are also void, because the limits of the village were not fixed or designated before such policemen were appointed, as required by ch. 463, Laws of 1885. The answer, however, alleges that such policemen were duly appointed under the authority vested in said board of supervisors by ch. 19, Laws of 1881, as amended by ch. 463, Laws of 1885.

The only material question in the case, and that which has been argued by the counsel for the respective parties before this court, is the question of the constitutionality of ch. 292, Laws of 1883, and upon its construction, if it be held constitutional. It is contended by the learned counsel for the respondents: (1) That said chapter should be held void for uncertainty. (2) That if it be not void for uncertainty, and it must be construed as authorizing the town board in the exercise of their authority under said chapter to incur expenses which must be paid for by taxation of the entire taxable property of the town, then it should be held unconstitutional, as in violation of sec. 23, art. IV, of the constitution, as violating the uniformity of town government. (3) It is also argued by the learned counsel for the respondents that it is beyond the power of the legislature to direct a tax for village purposes to be levied and collected upon all the property in the town in which such village is situated.

The following is a copy of ch. 292, Laws of 1883: "All powers relating to villages and conferred upon village boards by the provisions of chapter 40 of the Revised Statutes and all acts amendatory thereof, excepting those the

Land, Log & Lumber Co. and others vs. Brown and others.

exercise of which would conflict with the provisions of law relative to towns and town boards, are hereby conferred upon towns and town boards of towns containing one or more unincorporated villages having each a population of not less than one thousand inhabitants, and are made applicable to such unincorporated village or villages, and may be exercised therein when directed by a resolution of the qualified electors of the town at the last preceding annual town meeting."

We are at loss to comprehend how this act can be declared void for uncertainty. At the time it was enacted it was known that there were in different portions of the state several large villages or collections of inhabitants in a compact form, ordinarily called villages; that they were portions of the towns in which they were situated, and composed a part of such towns, governed in all things by the laws in regard to towns generally; and that such villages had neglected or declined to incorporate as villages under the general laws of this state in regard to the incorporation of villages. It was also apparent to the legislature that these villages, from the fact that they composed communities differing from the ordinary town communities, necessarily required the exercise of governmental powers in some respects different from the ordinary township community, especially in regard to police regulations, facilities for the extinguishing of fires, and the care and improvement of streets; and as they must remain an integral part of the town in which they were situated until incorporated under the general laws of the state, the legislature granted to the boards of supervisors of the respective towns in which such villages were situated the authority to exercise certain powers in and over the inhabitants of such villages whenever the legal electors of the town in which any such village was situated should, at the annual town meeting, by resolution duly adopted, require the board of supervisors

to assume and exercise the powers granted by said ch. 292, Laws of 1883, in respect to said villages.

It is clear that the act of 1883 does not undertake to incorporate such village as a separate municipality from the town, but simply enlarges the powers of the town board in which such village is situated for the purpose of meeting the necessities of the inhabitants of such village. The act is not void for uncertainty, as the powers granted to the town boards are defined by reference to the powers granted to village boards, and their powers are clearly defined in ch. 40, R. S. 1878, and the acts amendatory of such chapter. And the qualification that they shall not exercise any powers granted to a village board which are inconsistent or in conflict with the powers granted by law to town boards, is not in itself indefinite, however difficult it may be in certain cases to determine what powers of a village board would be inconsistent with the powers of a town board. It is the business of the courts to determine that question whenever a proper case arises, and not to declare the law unconstitutional because there may be doubts as to the exact extent of the powers granted in certain cases. We conclude that ch. 292, Laws of 1883, is not void for uncertainty, and also that it is not void for attempting to incorporate a village or villages by a special act.

As we have said above, the act of the town electors in conferring upon the town board certain powers in respect to such villages, under the provisions of said ch. 292, Laws of 1883, does not incorporate the village as a separate municipality. The village still remains a part of the town for all purposes of taxation and government. The act is certainly not void as violating sec. 3, art. XI, of the constitution. We are at a loss to see how an act of the legislature can be held as violating this section of the constitution, when the act does not purport to incorporate the village. It is not for the courts to say to the legislature, you must

either incorporate these communities as villages or cities, or else you must not legislate in regard to their government. It is probable that the legislature might, in its discretion, enforce the incorporation of communities as cities or villages, under proper limitations; but this power does not deprive the legislature of the power to legislate for the control and government of such communities before it is deemed wise to incorporate them.

It is also argued that ch. 292, Laws of 1883, violates the provisions of sec. 23, art. IV, of the constitution, which provides that " the legislature shall establish but one system of town and county government." And we are informed that the learned circuit judge in sustaining the injunction in this case was of the opinion that the act was a violation of said sec. 23, art. IV. We think the learned circuit judge was mistaken in his opinion. Ch. 292, Laws of 1883, is an amendment of the laws concerning towns and the government thereof. Like many other laws of the state, it provides for the exercise of different powers by the boards of different towns, when there is anything in a town which calls for the exercise of such different or additional powers. The act is as general as any other general act. It provides for the exercise of the additional powers in all towns in which villages are situated having a given number of inhabitants, It is not subject to the criticism that, though general in form, it is special in fact, as it is a matter of public notoriety that there are and have been several towns in the state to which the act can be applied.

To hold that this section of the constitution requires the legislature to make all laws for the government of towns applicable to every town in the state, without any regard to the wealth, population, or other peculiarities of such towns, would be to hold a very large portion of the legislation on the subject of towns in this state unconstitutional and void. As instances of these laws, see sec. 1240, R. S.,

Land, Log & Lumber Co. and others vs. Brown and others.

in regard to the assessment of highway taxes, and sec. 1320, in regard to building bridges. It is clear that the act in question is not a violation of the system of town government, but a part of the system, in order to adapt the system to the peculiar wants of certain towns in the state. The decisions of this court, cited by the learned counsel for the respondents, holding that certain laws enacted by the legislature were in violation of this section of the constitution, do not seem to us as applicable to the law in question in this case.

It is also argued by the learned counsel for the respondents that if the act must be construed as authorizing the town board to make expenditures in the village for waterworks, fire protection, or police regulations, then it should be declared void under some supposed rule of public policy which forbids the property of a person to be taxed when the purpose for which the taxes are levied and expended does not benefit his property. As we have said above, the act of 1883 does not separate the village from the town, but simply confers authority upon the town board to exercise certain powers in respect to such village as a part of the town. The fact that money is raised by taxation upon all the taxable property of a town, to be expended for some improvement lawfully made in one corner of the town, and which, so far as any direct beneficial results are concerned, is confined to the immediate neighborhood of the place where the improvement is made, has never been held, in this state, a violation of any constitutional restriction or of any supposed public policy. If a rule for taxation should be adopted which limits the right of taxation for public improvements to such property only as it can be shown is directly benefited by such improvement, it would result in endless confusion and litigation, and render void very many acts for the government of towns and counties. The opening of very many highways, and the building of very many

bridges, by towns and counties, where the expenses of opening such highways and building such bridges are made charges upon all the property of a town or county, would be unlawful. No matter how large the town, all expenditures for town government and for local improvements in such town must be paid from taxes levied upon all the property of the town, unless the legislature directs it to be levied in some other way. It is for the legislature to fix the limits of the taxing district, and not for the courts. This court has repeatedly affirmed this rule. This court has affirmed the validity of the law concerning the building of bridges, which compels the whole county to contribute to the building of a bridge in one town, and that without regard to the question whether the bridge to be built would be any direct benefit to any other town in the county. So in regard to the highway taxes, this court held that highway taxes might be lawfully levied upon lands for the construction and repair of highways not within six miles of the land taxed, and which in the then state of the town received no possible direct benefit from the building and repair of such roads. So with respect to school taxes levied upon lands so far from the place where the schools in the town were maintained that they would be of no practical use to persons residing on the lands so taxed. So in regard to local improvements in cities, this court holds that the district to be taxed for such improvements may be fixed, either directly or indirectly, by the legislature; and that the justice or injustice of the limits of the taxing district, when fixed by the legislature or some other authority authorized by law to fix the same, cannot be questioned by the courts. *Teegarden v. Racine*, 56 Wis. 545; *Dickson v. Racine*, 61 Wis. 545, 549; *T. B. Scott Lumber Co. v. Oneida Co.* 72 Wis. 158; *State ex rel. Baraboo v. Sauk Co.* 70 Wis. 485.

But if it were necessary that the court should be able to find that the property of the plaintiff was directly or indi-

rectly benefited by the expenditures made by the town in protecting the property of the village from destruction by fire, or in preserving peace and good order in said village, it would not be difficult to find that fact. Certainly every person resident in any town, or having any property therein, is interested in the peace and good order of all the people in said town, without any regard to their particular location; and when a considerable portion of the taxable property of said town is in imminent danger of destruction by fire, it would seem that all tax-payers in the town are to some extent interested in protecting the same from such destruction. Their burden of taxation is lightened by its preservation, and increased by its destruction. That the powers exercised by the town board in this case are such as are conferred upon village boards by ch. 40, R. S., is very clear (see subd. 10, 24, sec. 892, R. S.), and the powers so exercised by them do not appear to conflict with any of their powers as a town board.

As it is evident the injunction was granted in this case under the impression that ch. 292, Laws of 1883, was unconstitutional and void, and not because of an abuse of the powers granted by that act, we think it ought to have been dissolved on the motion of the appellants.

*By the Court.*— The order appealed from is reversed, and the cause is remanded with instructions to the circuit court to vacate the order granting the preliminary injunction, and for further proceedings according to law.

A motion for a rehearing was made by the respondent. In support of the motion there was a brief by *W. F. Bailey*, attorney, and *Stark & Sutherland*, of counsel. In opposition thereto there was a brief by *Alban & Barnes*. The motion was denied January 29, 1889.

See note to this case in 40 N. W. Rep. 482.— REP.