HANDLOS, Respondent, vs. TOWN OF STATE LINE and others, Appellants.

*November 9—December 5, 1939.*

For the appellants there were briefs by *Frank W. Carter* of Eagle River, attorney, and *James E. Coleman* of Milwaukee of counsel, and oral argument by *Mr. Coleman.*

*Earl A. Korth* of Rhinelander, for the respondent.

FOWLER, J. As appears from the foregoing statement, this is a taxpayer's action to enjoin the expenditure by the town of State Line of public funds for constructing certain proposed public improvements. The improvements involved consist of three items:

"(A) Installation of ornamental street lighting on both sides of County Highway B from the Community House east to U. S. Highway 45.

"(B) Construction of concrete sidewalks on the south side of said County Highway B from the Community House east to U. S. Highway 45.

"(C) For the moving of certain buildings situated on the south side of said County Highway B from the Chicago & Northwestern R. R. Co. tracks east of U. S. Highway 45 to certain property to be purchased or acquired at the expense of the defendant town of State Line, and to construct under said buildings when so moved, basements and foundations similar to those under said buildings at the time of the removal."

Item (A) was let by the town board to the defendant Clifton Engineering Company for $8,300; item (B) to defendants Carper & Turnquist for $2,605.36. The work covered by item (C) was let to defendant Axel Hill for $2,940.

The contracts involved were initiated by action taken at a special town meeting called under sec. 60.12, Stats., pursuant to a petition signed by more than twelve voters of the town. The petition specified the purpose of the meeting as follows:

"For the purpose of authorizing the said town to borrow from the trust funds of the state the sum of fifteen thousand

($15,000) dollars for the purpose of improving highways in said town, particularly County Highway B from Community House in said town east to U. S. Highway 45, also in said town."

The notice of the meeting given pursuant to sec. 60.13, Stats., stated the purposes of the meeting precisely as given in the petition. At the meeting the electors voted sixty-seven to sixty-five to borrow said sum from the trust fund for the purpose expressed in said petition and said notice.

The appellants claim that the contracts involved were authorized by the proceedings above noted. The respondent claims that under the statutes enumerating the powers of town meetings and town boards the proceedings confer no power to let the contracts and the contracts are void.

(1) It is first to be observed that when work is let or otherwise undertaken pursuant to a vote taken at a town meeting, the work to be done must be particularly designated in the resolution or proposition upon which the electors vote. The work here involved is not so designated. The particular items of work described in (A), (B), and (C) above cannot be considered as within the proposition for "improving highways in said town, particularly County Highway B from Community House in said town east to U. S. Highway 45, also in said town." It is contended that the nature of the work contemplated as covered by the proposition voted on was explained to those present at the town meeting by the county highway engineer, but we consider that a general statement made to voters present when the statement is made is insufficient to satisfy the calls of the instant situation. In submitting a works proposition by printed ballot the ballot must specifically cover or describe the works to be constructed pursuant to it so that the voter will know when he votes just what he is voting for or against. *Wisconsin P. & L. Co. v. Public Service Comm.* 226 Wis. 370, 276 N. W. 625.

(2) It is conceded that neither the town meeting nor the town board has any powers except those conferred by the

statutes. The tax burden of repaying the loaned funds falls upon the taxpayers of the whole town of State Line, which includes three ordinary townships, and the three items of the contemplated improvements inure wholly or at least all but remotely to the benefit of the Land O' Lakes community.

It was held in *McGowan v. Paul* (1910), 141 Wis. 388, 391, 123 N. W. 253, that neither the town meeting nor the town board has power to impose a tax on the property within a town to pay for street lighting and sidewalks in an unincorporated village, and that such a tax and contracts let by the town for construction of such improvements are invalid. Such is still the law, unless statutes enacted since that decision confer such power. Unless such later enacted statutes exist, it precludes taxing the property within the town, for the lighting and sidewalks involved, for Land O' Lakes is such a community as sec. 61.01, Stats., permits to be incorporated and as it has not been incorporated it is an unincorporated village.

Sec. 60.18 (12), Stats., authorizes a town meeting to invest the town board with the powers of village boards, where a town contains an unincorporated village, and has a population of five hundred. This statute was in force as sec. 776, sub. 13, when the *McGowan Case, supra,* was decided. This statute does not avail the appellants because no town meeting of the town of State Line has conferred such power on the town board. Sec. 60.29 (11), Stats., empowers town boards to contract "for the lighting, when necessary to facilitate public travel, of the principal improved highways of the town, and of bridges located thereon." There are no bridges on the portion of County Trunk B proposed to be lighted. It already has five electric lights. Doubtless the town board could install such additional lights, if any, as are reasonably necessary to facilitate public travel on the portion of the road, but it is manifestly beyond reason to hold that "ornamental

street lighting on both sides" of the road through Land O' Lakes, at a cost of $8,300 are so necessary. Manifestly, such lighting falls within the reason of the rule of the *McGowan Case, supra,* that "it would seem quite unreasonable to do such work as that in question at the expense of taxpayers of a town, generally, necessarily including many persons not benefited at all by the expenditures." Sec. 60.29 (11), Stats., was enacted as sec. 819, sub. 11, by ch. 245, Laws of 1917, but it appears not to have affected the application of the rule of the *McGowan Case, supra,* to the instant case. Sec. 60.29 (11), Stats., was in force when the *Greenfield Case,* next-below cited, was decided. All other statutes referred to by the appellants that relate to the powers of town boards were in effect when the *Greenfield Case* was decided and are covered by the decision of that case. None of those statutes, whenever adopted, were then considered to affect the rule of the *McGowan Case.*

The case of *Paul v. Greenfield* (1930), 202 Wis. 257, 232 N. W. 770, is relied on by appellants as rendering the *McGowan Case, supra,* not now applicable. Such is not the fact. It is plain that the taxation for lighting involved in the *McGowan Case* upheld in the *Greenfield Case* was upheld solely because the town meeting had given the town board the powers of village boards, and that the proceedings prescribed for village boards had been complied with by the town board, and steps had been taken by the town board to create the unincorporated village of Hales Corners into a separate taxing district so that the tax involved could be properly carried out upon the tax roll. Secs. 60.29 (6), 70.23, 70.65 (1), Stats. It seems equally plain that had the provisions next above referred to not been complied with, the town board of Greenfield would have been without power to impose the tax. As the proceedings involved in the *Greenfield Case* have not been here taken the inference is plain that the expense of street

lighting and sidewalks, both which were involved in the *Mc-Gowan Case,* cannot be imposed upon the town. Sec. 60.29 (30), Stats., is referred to in this connection. It specifically provides that *when* a town board has had the powers of village boards conferred upon it at town meeting, and has determined "to provide in any unincorporated village in said town any convenience or public improvement, including the lighting of streets, *then* the cost thereof shall be assessed upon all property within the boundaries of the unincorporated village." This indicates clearly the legislative intent, as held in the *McGowan Case,* that public improvements in unincorporated villages must be paid for out of taxation of property within the village.

As to the sidewalk covered by item (B) of the improvements involved, we find only two statutes affecting the power of town boards as to sidewalks in unincorporated villages. Sec. 60.18 (12), Stats., has been already covered. It does not apply here because the powers of village boards have not been conferred upon the instant town board by the town meeting. If the power had been conferred, the board would be bound by the power of village boards as to sidewalks, which is covered by sec. 61.43, Stats. The expense of sidewalks, when built by a village, is taxed against the abutting land, subs. (2) and (3), unless the board upon authority voted by the electors shall direct one half the cost to be paid out of the general fund of the village, sub. (5).

The only other statutes that could affect the matter would be sec. 60.29 (26), Stats. That applies only when a petition has been signed by a majority of the abutting owners. No such petition has been here filed.

As to item (C) it contemplates widening the street through Land O' Lakes, and provides for moving the buildings on the land acquired for that purpose back of the new lines of the street and constructing new foundations therefor at the ex-

pense of the town. Sec. 60.29 (27), Stats., authorizes town boards to acquire land for widening a street, but provides that in so doing they are vested with the powers relative thereto exercised by village boards under ch. 61, Stats. This implies that in so doing they must follow the procedure of village boards. Sec. 61.36, Stats., empowers village boards to acquire land to widen streets, and sec. 61.37 provides how this may be done. This section was not followed in the instant case, and for want of proper procedure the method adopted for paying for the land acquired cannot be carried out even if it might otherwise be proper. Sec. 60.29 (26) (a), Stats., provides a method by which a town board may improve streets or roads. Widening a street would seem to be an improvement within this section, and to authorize it there must be a petition signed by a majority of the abutting owners. In case of the filing of such petition the town board is given the powers of village boards, but on such petition benefits and damages to abutting owners must be assessed as provided by secs. 61.40 to 61.42, Stats., as in the case of village boards. By sec. 61.40 (2), Stats., village boards are required to assess some part of the cost of street improvements against abutting owners on a petition therefor being filed signed by a majority of the abutting owners.

The appellants claim that notwithstanding all that is said above the instant town board had power to borrow the $15,000 from the state trust funds and to expend it for the purpose for which it was borrowed. This contention is based on the provision of sec. 67.01 (8) (a), Stats., that ch. 67, Stats., relating to municipal borrowings is not applicable to borrowings from the state trust funds, but such borrowings are governed by ch. 25, Stats. The contention implies that the authorities who make the loan from these funds may loan them for any purpose they see fit to loan them, whether the purpose be a lawful one or not, and whether or not the

municipal authorities with whom they deal have power to impose taxes for those purposes. Sec. 25.01 (3), Stats., is relied on to support the contention. It provides that funds may be loaned to towns "as hereinafter [by ch. 25] provided." Examination of ch. 25, Stats., discloses that sec. 25.05, Stats., is the only section in the chapter relating to the phrase "hereinafter provided" contained in sec. 25.01 (3), Stats. It prescribes the formalities of the application—sub. (1) of sec. 25.05, Stats., provides that an application shall be made and what it shall contain. Sub. (2) provides how the application in case of a town shall be signed. Sub. (4) provides how an election shall be held when the question of incurring an obligation by a municipality must be submitted to its electors. Sub. (5) provides for a tax levy to provide for repayment of the loan. We perceive nothing in these provisions to warrant the implication that the statutes covering the powers of town meetings and town boards are abrogated when towns apply for loans from the state trust funds, or that the statutory requirements imposed upon town meetings and town boards as necessary to empower the town to make public improvements are abrogated in such cases. At least two things are necessary in order to validate any municipal loan from the trust funds. The loan must be made for a lawful purpose, and statutory requirements on the part of the municipality and its governmental authorities, prescribed as necessary to empower the municipal action involved, must be complied with. These requirements were not complied with in the instant case.

It follows that each of the contracts covering the items involved is void and its performance was properly enjoined.

*By the Court.*—The judgment of the circuit court is affirmed.